Estate of James L. Claghorn, deceased.    Appeal of Emma C. F. Keller.

*Statute of limitations—Decedents' estates—Executors and administrators.*

The personal representative of a decedent is not answerable for a cause of action not created by the decedent; and if by a new promise the representative revives a debt already barred, or prolongs the life of one not yet barred, the contract is his own, and he is personally answerable, and, although he is not bound to plead the statute where he believes the debt unpaid, yet in the distribution of a fund creditors whose interests are affected can plead it.

When a fund in the orphans' court is not sufficient to pay all creditors each creditor has a right to oppose any other claimant, by showing the debt was paid or that it was barred by the statute of limitations.

*Decedents' estates—Executors and administrators—Bond—Statute of limitations.*

A creditor taking a bond from an executor or administrator discharges the old debt; the fact that the representative calls himself executor or administrator in the bond is mere surplusage, and he is chargeable only in his own right.

A bond to a bank recited that "J. and R. executors of C, deceased, are held and firmly bound" unto the bank, and undertake that their successors in the trust shall be bound. It was further declared that the bond and warrant were executed to prevent the running of the statute against the estate of C. who was indorser for R. The condition of the bond was that if R. did not pay his debt to the bank the estate would continue answerable. The warrant was that if J. and R., executors, did not pay the notes of R. at maturity then any attorney was authorized to appear for them, their heirs, executors or administrators, at the suit of the bank, and confess judgment thereon against them, their heirs, executors and administrators. When the estate was settled more than six years after the death of C. there was not sufficient to. pay all the creditors, and one of them pleaded the statute of limitations against the claim of the bank. *Held,* (1) that the judgment entered upon the warrant was against the executors personally, and not against C.'s estate; (2) that the bond itself could only be construed as a promise that the executors would not plead the statute against the bank, when the assets were for distribution; (3) that a creditor could plead the statute against the bank, although the

executors did not join in the plea; (4) that the action of the orphans' court in disallowing the bank's claim was not a collateral attack upon the judgment of the common pleas, inasmuch as the record showed that the judgment was not against the estate, but against the executors personally.

Argued Jan. 22, 1897. Appeal, No. 392, Jan. T., 1896, by Emma C. F. Keller, from decree of O. C. Phila. Co., Oct. T., 1894, No. 261, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to adjudication.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Isaac D. Yocum* and *Thomas H. Talbot*, for appellant.—The addition of the words "as executors" to the names of the obligors in a bond, or to the names of the debtors in a judgment, does not make the liability of the bond or judgment run against the estate of the testator: Seip v. Drach, 14 Pa. 352; Rich v. Sowles, 64 Vt. 408; Hardy v. Call, 16 Mass. 530.

Making the inquiry which in this case is forced upon the court by the terms of the bond produced, and also by the warrant of attorney, or even the judgment itself, it becomes clear that this judgment ought to have been entered against the present defendant de bonis propriis: Daviess v. Mead, 2 Bibb, 397; Geyer v. Smith, 1 Dall. 347; Grier v. Huston, 8 S. & R. 402; Fritz v. Thomas, 1 Wharton, 66; Seip v. Drach, 14 Pa. 352; Watts v. Devor, 1 Grant, 267; Williamson's App., 94 Pa. 231; Higgins v. Driggs, 21 Fla. 103.

A recognition of the old debt (due from the decedent) by a personal representative is but evidence of a new promise on which he may not be sued otherwise than in his personal character; for an executor or administrator is answerable in his official character for no cause of action that was not created by the act of the decedent: Geyer v. Smith, 1 Dall. 347; Seip v. Drach, 14 Pa. 352.

If the words of the record be doubtful, we are to understand them in the sense which will best comport with a legal judgment: Hardy v. Call, 16 Mass. 530.

A promise by an executor does not bind the estate, but the executor personally: Seip v. Drach, 14 Pa. 352; Williamson's. App., 94 Pa. 231.

*John Weaver, John Sparhawk, Jr.,* and *John G. Johnson,* for appellee.—A judgment cannot be attacked in a collateral proceeding, except for fraud: Weaver v. Brenner, 145 Pa. 299; Brundred v. Egbert, 164 Pa. 615; Woods v. Irwin, 141 Pa. 278.

OPINION BY MR. JUSTICE DEAN, July 15, 1897 :

Julia Claghorn and J. Raymond Claghorn, widow and son of James L. Claghorn, deceased, and executors of his will, filed their first account in the orphans' court May 27, 1895; their testator died August 25, 1884, and the wife and son were the sole beneficiaries under his will, and from the date of testator's death had been in possession of his estate; the will expressly enjoined that they were not to give bond for the faithful performance of their duty as executors. It is not clear from the evidence and the confused and tangled account filed whether the estate of testator was solvent at his death; it is very clear that when the first account was filed, more than ten years afterwards, it was largely insolvent. There was for distribution, after adding a surcharge of $2,905 and deducting counsel fees and expenses, a balance of $24,867. But two creditors claimed payment out of this fund; Mrs. Emma C. F. Keller, who demanded $36,344.34, with interest from May 1, 1894, and the Commercial National Bank, $4,300, with interest from March 22, 1894. The court below allowed both claims and directed a distribution of the balance pro rata. From this decree Mrs. Keller appeals, assigning for error the allowance of the bank's claim. It follows, if her appeal be successful, the payment to her will be increased $4,300, with interest from March 22, 1894. Her averment is, no valid claim against the fund was exhibited before the court below by the bank, therefore it was error to allow it.

The claim of the bank was founded on a judgment entered by it in common pleas of Philadelphia county against James. Raymond Claghorn and Julia Claghorn, executors of James L. Claghorn, April 19, 1894, for $10,000, conditioned for the payment of three promissory notes, amounting to $7,750, of which

J. Raymond Claghorn was drawer and his father in his lifetime was indorser. It was admitted at the adjudication that J. Raymond Claghorn had reduced the amount of the real debt by payments to the sum of $4,300, with interest from March 22, 1894.

It is argued by appellant: 1. That on the evidence, and from the record of the common pleas, the debt was that of J. Raymond Claghorn individually, and not of the estate. 2. That the judgment from its terms is against the executors personally, and not against them in their representative capacity, therefore, it cannot be distributed to from the fund.

It is settled, that every judgment entered on a specialty with warrant of attorney to confess judgment must follow strictly the authority conferred by the warrant; the attorney who executes the warrant cannot change its terms or enlarge its scope. The bond and warrant are as follows:

"Know all men by these presents that we, Julia S. Claghorn and J. Raymond Claghorn, executors of the last will of James L. Claghorn, deceased, are held and firmly bound unto the Commercial National Bank of the state of Pennsylvania, in the sum of ten thousand dollars, lawful money of the United States of America, to be paid to the said obligees, their certain attorney, successors or assigns, to which payment well and truly to be made we do jointly and severally bind ourselves and our successors in the trust firmly by these presents. Sealed with our seals. Dated the twelfth day of July, A. D. 1889.

"Whereas, the said bank held at the decease of James L. Claghorn sundry promissory notes of J. Raymond Claghorn indorsed by the decedent, and whereas the amount remaining unpaid is seven thousand, seven hundred and fifty dollars, represented by three notes of J. Raymond Claghorn, each payable three months after date—one dated May 9th, 1889, for $1500.00; one dated May 29th, 1889, for $5500.00; one dated June 21st, 1889, for $750.00; and the bank holds as collateral the original notes indorsed by James L. Claghorn, and the said executors have agreed to execute the present bond and warrant to prevent the claim of the bank against said decedent's estate from being barred by the statute of limitations.

"Now the condition of this obligation is such, that if the said J. Raymond Claghorn, his heirs, executors or administrators shall pay at their respective maturity his three notes above

designated, and shall also pay at maturity all renewals thereof in whole or in part until the indebtedness of decedent's estate to the bank is fully paid ; then this said obligation shall be void, or else be and remain in full force and virtue. No judgment to be entered by virtue of the annexed warrant until default is made in the payment of the said notes or their renewals when such renewals are granted by the said bank.

" (Signed) JULIA S. CLAGHORN. (Seal)
" (Signed) J. RAYMOND CLAGHORN. (Seal)

"WARRANT OF ATTORNEY.

" To James W. Paul, Esq., attorney of the court of common pleas of Philadelphia, in the state of Pennsylvania, or to any other attorney of the said court or of any other court there or elsewhere : Whereas, We, Julia S. Claghorn and J. Raymond Claghorn, executors of the last will and testament of James L. Claghorn, deceased, in and by a certain obligation bearing even date herewith, do stand bound unto the Commercial National Bank of the state of Pennsylvania in the sum of ten thousand dollars, lawful money of the United States of America, conditioned for the payment at their respective maturity, of three promissory notes of J. Raymond Claghorn, all drawn payable three months after their respective dates : one dated May 9th, 1889, for $1500.00 ; one dated May 29th, 1889, for $5500.00 ; one dated June 21st, 1889, for $750.00 ; and of the payments of any of the renewals of the said notes when renewed by the said bank :

" In default of any such payment these are to desire and authorize you to appear for us, our heirs, executors or administrators, at the suit of the said bank, their successors or assigns, on an action of debt there or elsewhere brought or to be brought against us, our heirs, executors or administrators, upon the said obligation, and confess judgment thereon against us, our heirs, executors or administrators, for the sum of ten thousand dollars by non sum informatus nihil dicit, or otherwise as to you shall seem meet, and for you or any of you so doing, this shall be your sufficient warrant.

" In witness whereof we have hereunto set our hands and seals this twelfth day of July, A. D. 1889.

" JULIA S. CLAGHORN. (Seal)
" J. RAYMOND CLAGHORN. (Seal) "

It will be noticed: 1. That by the bond, the undertaking is that " Julia S. Claghorn and J. Raymond Claghorn, executors of the last will and testament of James L. Claghorn, deceased, are held and firmly bound " unto the bank, and they further undertake that their successors in the trust shall be bound; it is further declared that the bond and warrant are executed to prevent the running of the statute against the estate of James L. Claghorn, who was indorser for his son, J. Raymond Claghorn. 2. The condition in substance is that if J. Raymond Claghorn does not pay his debt to the bank, the estate will continue answerable. 3. The full authority in the warrant is that if Julia S. Claghorn and J. Raymond Claghorn, executors, do not pay the three notes of J. Raymond Claghorn at maturity, then any attorney is authorized to appear for them, their heirs, executors or administrators, at the suit of the bank, against them, their heirs, executors or administrators, and confess judgment thereon against them, their heirs, executors and administrators. In the warrant the authority is to appear for them, their heirs, executors and administrators, and to confess judgment against them, but not in their representative capacity.

By the warrant, therefore, the judgment is against them personally; there is no judgment or adjudication by a court of record against the estate of James L. Claghorn. The bond itself may be construed as a promise that they will not plead the statute against the bank, when the assets are for distribution; it amounts to nothing more. And they kept this promise; they did not plead the statute against the bank on the distribution. We have, then, a promise by the two executors, one of whom was the principal debtor, and his father, the surety, that they will not plead the statute in favor of the father's estate. To what extent does this promise bind the estate on a distribution, eleven years after the testator had contracted a simple debt, which in six years was barred by the statute?

In Geyer v. Smith, reported in a note, 1 Dall. 347, it was held, as early as 1789, on the authority of many English cases cited, that a creditor taking a bond from an executor or administrator discharges the old debt; that calling himself executor or administrator in the bond is mere surplusage, and that he is chargeable only in his own right. This was followed by Jones v. Moore, 5 Binn. 573, Bailey v. Bailey, 14 S. & R. 195, and

Scull v. Wallace, 15 S. & R. 231, in each of which it was taken for granted as said by GIBSON, C. J., in Fritz v. Thomas, 1 Wharton, 66, that an acknowledgment of the debt by the personal representative would take the case out of the statute, but the point was not adjudged. So in the last named case the court felt at liberty to decide the case directly, and it was held that the executor or administrator "is answerable in his official character for no cause of action that was not created by the decedent himself." And further, that the administrator "cannot charge himself personally without a new consideration; he cannot charge the estate on the foundation of the old one to the prejudice of creditors whose fund might be materially lessened by it. He is not bound to plead the statute; because he may know the debt to be a just one; and for that reason, the matter is left to his discretion; but it follows not that he may tie up his hands from using it when the time comes, by a mistaken concession, or an engagement which had no consideration to bind him personally or officially. . . . Indeed there is no course open to us but to follow the principle out or abandon it altogether; for to be consistent we must either return to the doctrine of revival without qualification, or maintain that an action on his own promise lies not against an executor or administrator in his official character." This decision has either been followed or recognized in every case in which the point has been raised since, commencing with Reynolds v. Hamilton, 7 W. 420, down to 46 Pa. 239.

This, then, is a promise by the executors not to plead the statute of limitations against this creditor when he presented his claim. It does not bind the estate; they, under the authorities, were not even bound not to plead it on distribution, but might then have set it up in the face of their original promise. They do not do so, but a creditor, this appellant, does. Would it avail her when the executors waived the right to plead it? Fritz v. Thomas, supra, by plain implication, holds the promise of the executors would not bar her right. But in Kittera's Estate, 17 Pa. 416, the point is directly decided. It was there held that distribution of an estate of a decedent in the orphans' court is, under the act of assembly, to be made "to and among the persons entitled to the same;" that the right of each creditor to be heard in support of his claim and in

opposition to every claimant who interferes with it is necessarily involved in the right to demand payment out of the fund. " Each creditor or claimant has a right to appear and to be heard, so far as may be necessary for the protection of his own interest; and of this proceeding the administrator has not the control, nor is he responsible for errors in the distribution so decreed. At a time when the statute of limitations was not in favor it was held that an executor or administrator was not bound to plead it. This was only applicable to actions in which the personal representative of the decedent was entrusted with the management of the defense, and in which the pleading was necessarily regulated by his own discretion. It has no place in a proceeding before the orphans' court. . . . It follows that when the fund is not sufficient to pay all, each creditor has a right to oppose any other claimant, by showing payment of the debt or that it is barred by the statute of limitations." This was followed by Hoch's Appeal, 21 Pa. 280, and Ritter's Appeal, 23 Pa. 95. In this last case it was said that where the personal representative had in good faith actually paid a debt barred by the statute, without protest by legatees or creditors, equity would not refuse him credit therefor in his account. But it was expressly decided he could not bar distributees from pleading the statute by refusing to plead it himself.

It will be seen from these most explicit decisions that the personal representative is not answerable for a cause of action not created by the decedent; that if by a new promise he revive a debt already barred, or prolongs the life of one not yet barred, the contract is his own, and he is personally answerable. And, although he is not bound to plead the statute where he believes the debt unpaid, yet in the distribution of a fund, creditors whose interests are affected can plead it. Where, however, a suit is brought against him in his representative capacity on a debt barred by the statute, and he waives his right to plead it, the judgment is de bonis testatoris, and cannot be questioned thereafter on distribution of the estate.

It is argued that to disallow the bank's claim is to question collaterally the conclusiveness of a judgment of the common pleas. But this is a mistake. An inspection of the record shows it is not a judgment against the estate, but against the executors personally; and assuming the executors could have,

by that form of proceeding, bound the estate, they framed no warrant to any attorney to confess such a judgment. It is not questioning a judgment collaterally to ascertain from the record against whom it is rendered, and whether it can be legally paid out of the fund for distribution.

We think it was error to not sustain the plea of the statute preferred by this appellant, therefore, the decree of the court below is reversed so far as it awards part of the fund to the appellee, and it is directed that as the entire fund does not pay the amount allowed on appellant's claim the whole fund be paid over to her. And further, that appellee pay the costs of this appeal.